9 DoF

# IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

RICHARD DOSS,
    *Plaintiff,*

V.

THE GEO GROUP;
FLORIDA DEP'T. OF CORRECTIONS;
CORRECTIONAL CARE SOLUTIONS;
WARDEN, STINE;
ASSISTANT WARDEN, LAWRENCE;
DOCTOR JULES HELLER M.D.
JONATHAN NASH, HEALTH SVCS. ADMIN.;
NURSE AMEDE, ARNP;
JOHN/JANE DOE, EXECUTIVE MEDICAL DIRECTOR,
TALLAHASSEE, FLORIDA,
*Individually And In*
*Their Official Capacities,*
    *Defendant(S).*

CASE NO. SD - 2018 - CADO
3525XXX MB
DIVISION AG

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RICHARD DOSS, sues the above named defendants and alleges:

1.    This is an action for medical malpractice, Negligence under the "Florida Tort Claims Act", civil rights deprivation arising out of defendant's deliberate indifference "DI" to his serious medical needs "SMN" in their failure to examine, diagnose, and treat plaintiffs multiple torn ligaments "MTL" and documented chronic peripheral neuropathy pain while incarcerated, and violation of the Americans with Disability Act "ADA", Rehabilitation Act of 1973 "RA" by reason of intentional discrimination "ID." For defendants not personally responsible for plaintiff receiving inadequate medical care they did conspire with those personally responsible for professional's lack of medical care.

responsible for plaintiff receiving inadequate medical care they did conspire with those personally responsible for professional's lack of medical care.

## PARTIES

2. Plaintiff, RICHARD DOSS, (hereinafter "DOSS") at all times material to this action was a resident of Palm Beach County and was incarcerated by the State of Florida (hereinafter "State") and housed at South Bay Correctional Facility (hereinafter "SBCF").

3. Defendant The Geo Group ("GEO") a Florida Corporation and entity of the State and/or instrumentality is a private correctional corporation and in the business of housing prisoners with responsibility for their health care needs. Geo owned and operated SBCF in South Bay Florida.

4. Defendant Correctional Care Solutions "CCS", a Florida Corporation was at all times material to this action, contracted with GEO to provide health care to inmates at SBCF.

5. Defendant Dr. Heller "Heller" was at all times material to this action the medical director and licensed physician to practice medicine in the state of Florida. He was charged with the responsibility for providing appropriate/adequate health care to plaintiff and others incarcerated within SBCF.

6. Defendant Jonathan Nash "Nash" was the health services administrator at SBCF and at all times material hereto was charged with administering adequate health care to inmates at SBCF.

7. The Florida Dep't. of Corrections (FDOC) at all times material hereto was responsible for ensuring that all inmates received adequate health care pursuant to the ADA/RA and further responsible for ensuring that disabled and qualified prisoners were not intentionally discriminated against by reason of their disability and prevented from receiving benefits of services, programs or activities "SPA".

8.    Defendant ARNP Amede "Amede" at all time's material hereto is licensed to practice medicine in the state and responsible for providing adequate health care and services to the plaintiff.

9.    Defendant Warden, STINE "STINE" was the warden at SBCF and responsible for the overall operations including the proper management of appropriate and adequate SPA to inmates and ensuring DOSS received intended beneficiary of federal assistance provided and was not treated differently than similar situated disabled and non disabled prisoners.

10.    Assistant Warden of programs, LAWRENCE "LAWRENCE" at all times material hereto was responsible for ensuring that all disabled inmates within meaning of ADA/RA were not discriminated against or prevented from benefiting from SPA of GEO at SBCF.

## FACTUAL ALLEGATIONS

11.    On July 31, 2014 DOSS was sentenced to 78 months by the State to the Florida Department of Corrections "FDOC".

12.    He was transferred to five different institutions before arriving at SBCF, a privately operated and owned facility on 10/28/15.

13.    About 11/15/15, DOSS began filing medical nature grievances "MNG" and violation of ADA/RA because all defendants were continuously abandoning his needed health care  concerning his MTL that substantially limited his major life activity "MLA" to walk, stand, caring for his self, performing manual tasks, eating, sleeping, lifting, and bending, practically anything except sitting and writing.

14.    GEO contracted with CCS for medical services to provide health care to inmate at SBCF.

15.     Heller, Nash, Amede, GEO, CCS, and the State continuously denied DOSS' request for ortho consult for his obvious MTL.

16.     Heller and Amede failed to properly examine, diagnose, or treat DOSS MTL.

17.     Heller, Nash, Amede, GEO, CCS, STINE, and LAWRENCE, at all times relevant hereto continue to combine, conspire, confederate and agree to deny DOSS any medical treatment and were DI to his SMN.

18.     Heller, Nash, and STINE intentionally discriminated against DOSS and/or used bad faith when responding to grievances by making statements that he does not "qualify" for ortho consult or that he does not meet the "criteria" for MRI, even though Heller never laid a hand on DOSS or ever turned around to look at him during any appointment (4 appointments).

19.     From 10/28/15 until 8/31/16, which is the date DOSS saw Dr. Sams, ortho, who ordered MRI of Left shoulder and Left knee, DOSS received negligent, gross negligent or DI medical attention while incarcerated at SBCF, including the following:

a.      Repeated failures to examine, diagnose and treatment to repair MTL.

b.      Repeated failures to provide adequate and proper treatment for chronic peripheral neuropathy pain by prescribing neurontin. They deliberately and intentionally denied him proper treatment for Neuropathic Pain.

c.      Repeated failures and refusal to provide access to qualified and competent physicians

d.      Falsely recording, mis-recording and misreporting resulting in the course of treatment or refusal of treatment.

20.     The medical care provided by defendants, and those conspiring with them, fell below the generally accepted standard of care in the medical community.

21.    It took from 10/28/15 to 8/10/16 the date he finally saw ARNP Barosey, for CCS employees to misdiagnose and refuse to examine DOSS' obvious disability and need for qualified medical care caused by such failures.

22.    On 2/5/16, DOSS was forced to exchange his wheelchair for walker with wheels by NASH, HELLER, STINE, GEO, CCS, LAWRENCE and the State who all conspired to deprive DOSS of his 1st, 5th, 8th, and 14th amendment rights.

23.    The taking of DOSS' wheelchair and forcing him to rely on fully and partially torn rotator cuffs in order to support himself with walker caused him to suffer the unnecessary and wanton infliction of pain while walking with walker and falling on cement floor multiple times

24.    The taking of DOSS' wheelchair was perfected for non medical reason(s) as to the following adverse action.

a.    Placing an unconstitutional chill on his first amendment right to redress the government through grievances when his speech was constitutionally protected.

b.    On 2/2/16 DOSS requested reasonable accommodations of repairs to handle grips, elbow rests or newer wheelchair, an aide to be moved into his cell to help with manual tasks of making his bed, cleaning cell, toilet sink and to push wheelchair.

c.    Requests were sent to classification Hodges, AWS Hamilton who each responded on 2/4/16, that they had spoken to Nash who stated he would be "responding momentarily" or "conducting a review".

d.    That after responses from Hodges and Hamilton, NASH summoned DOSS to medical and personally conducted exchange for walker

25.    Paragraph 24 demonstrates that retaliatory punishment is casually related to the filing of grievances against Heller, Nash, and agreed to by STINE,

LAWRENCE, O'Harvey, L. Bowden, McManus, FDOC, Julie Jones, and the State.

26.    Although the following inmates can and do get out of their wheelchairs, stand and/or walk, they never had theirs exchanged for a walker to allegedly improve mobility. This shows that DOSS' treatment was different than similar situated disabled inmates.

a.    Bob works in general library, parks wheelchair and walks around alone. He advised DOSS that if he used his name and situation "there's gonna be a problem".

b.    Badger, a black guy, states he needs a brace for back, leg or neck

c.    Franco Webb – says Nash tried to take his wheelchair but he refused, has no ankles due to car accident.

d.    Castleberry – Took him 3 years to have hip surgery, has wheelchair, walker, and a cane.

e.    Wade – States he broke heel 12/13. Was healed 7-8 months later. Does not need wheelchair, but uses it as a crutch to get certain advantages i.e.; handicap cell.

f.    Joe Pedraro – 78 years old gets out and trains boxing.

g.    Tall slim white guy pushes wheelchair everywhere cancer.

h.    McCoy – States he cannot get medical to give him a brace so he can get out of wheelchair.

27.    ARNP Barosey referred DOSS to ortho Dr. Sams ordered MRI but it probably will be prolonged because of transfer. This referral and report constitutes sufficient evidence of medical negligence and DI to SMN

28.    The negligent, grossly negligent and/or deliberately indifferent medical treatment provided to DOSS is further described in report of ortho, Dr. Sams. This report must be obtained on discovery.

29. As a direct and proximate result of Heller, Nash, and Amede's acts or failures to act as described in this complaint, DOSS was caused to suffer the following damages.

a. Severe physical pain and suffering for an extended period of time causing aggravation of conditions they failed to diagnose when DOSS was brought to Heller on four different occasions and Amede twice where DOSS subsequently fell fourteen times and four different times in non ADA/RA confinement cells. Specifically, M2106 (no grab bars) fell once; M3106 fell twice within ten minutes; M4104 fell off toilet aggravating injury to left hip and right elbow about one hour before installing grab bar, fell trying to push button to flush toilet. Moved from M1104 to 3106 because the button was hard to push with a completely torn left rotator cuff and a partially torn right rotator cuff.

b. Fear, apprehension, anxiety, and other mental and emotional injuries and suffering experienced during the period of time in the defendants care and custody.

c. Depression and suffering of suicidal thoughts in thinking that life no longer has meaning upon the concept that there may never exist the opportunity to have MTL repaired at age 60

d. Degradation arising out of indifferent and abusive treatment and violation of civil rights guaranteed by the eighth and fourteenth amendment

e. Pain and suffering during the weeks and months following the possibility or surgery and physical therapy plaintiff is forced to go through

f. The real possibility that knees, shoulders, and back will never rise to the capacity previously obtained

g. Decreased ability and even substantially limited ability to walk, run, exercise, caring for himself, eating, lifting, bending, and standing, bathing and urinating (must sit to pee).

h.     Scarring and disfigurement

i.     Continuing pain and suffering and mental and emotional anguish, anxiety, depression as well as other suffering and diminished ability to enjoy life

j.     Medical expenses to be incurred in the future

30.    Plaintiff has complied with all provisions of chapter 766 and 768.28 of the Florida Statutes. A copy of the statutory notice of claim is attached hereto Exh. Pre suit investigation was conducted through grievance complaints and their bad faith and intentional discriminatory admission in responses by Heller, Nash, LAWRENCE, STINE, O'Harvey, McManus and L. Bowden.

**COUNT 1**
**MEDICAL MALPRACTICE V GEO, CCS, HELLER, NASH, AMEDE,**
**EXECUTIVE MEDICAL DIRECTOR AND STATE OF FLORIDA**

31.    Plaintiff repeats and re-alleges paragraphs 1-30 as if fully set forth herein

32.    This medical malpractice action is brought pursuant to Florida Statute 766 and all additional applicable statutory provisions.

33.    At all times material hereto the defendants as on site physicians or nurse practitioners and GEO and CCS as healthcare and medical providers owed DOSS a duty to ensure that his medical needs were competently met according to standards of the medical profession in the community.

34.    GEO, CCS, John/Jane Doe, Executive Medical director and the State at all times material hereto owed DOSS a duty to ensure its personnel were able to provide adequate medical care and that sufficient quality and quantity of its employees were present to provide that care.

35.    The same defendants in paragraph 35 above are repeated and re-alleged as if fully set-forth herein and further state these defendants breached their

duties to DOSS by committing some or all of the acts alleged in paragraph 30 above *INCLUDING but Not limited to HELLER and Nash.*

36.    These same defendants in paragraph 35 above breached their duty to DOSS by failing to provide adequate and competent supervision to meet the medical needs of DOSS.

37.    The servants, agents and employees of GEO, CCS, HELLER, NASH, STINE, LAWRENCE, and the State. Were at all times material to this action acting within the course and scope of their employment. As such, they are vicariously liable.

38.    All defendants as medical personnel's negligence, jointly and severally, directly and proximately caused the damages alleged above in paragraph 30

39.    As to these same defendants alleged in paragraph 37, above, there is no genuine bona fide defense and therefore, if these defendants attempt to defend against liability, DOSS should be awarded attorneys fee and cost in addition to his pain and suffering as a *Pro Se* litigant while sitting on his bunk with excruciating pain to his back and chronic peripheral neuropathy pain treatment he was denied because GEO and CCS refused to provide Neurontin and failed to replace it with comparable treatment medication. This was all caused through discriminatory intent in forcing DOSS to have to defend himself by completing at least four rough drafts before ever completing for typeset and refusing to settle these claims without trial. DOSS must therefore establish liability pursuant to Fla Stat. 57.105.

**WHEREFORE,** the Plaintiff RICHARD DOSS demands judgment against GEO, CCS, John/Jane Doe Executive Medical Director, FDOC, the STATE, Heller, Nash, and Amede in this matter for compensatory damages in the amount of $250,000.00, and medical relief for his multiple torn ligaments, back pain and

chronic peripheral neuropathy pain treatment for life and all available remedies under 768.28.

**COUNT II**
**NEGLIGENCE V. GEO, CCS**

40.     Plaintiff repeats and re-alleges paragraph 1 as if fully set forth herein.

41.     At all times relevant hereto GEO owned and operated SBCF and as operator of the facility, owed DOSS a non delegable duty to ensure that the medical needs of DOSS and other inmates were properly met.

42.     GEO, at all times material hereto owed DOSS the duty to ensure that the health care personnel employed at the facility met DOSS' medical needs and were capable to provide competent medical care by:

a.     Failing to sufficiently supervise CCS and its medical personnel to ensure that CCS had adequate medical staff at SBCF

b.     Failing to sufficiently supervise and ensure that CCS medical staff did communicate to GEO and CCS the severity of DOSS' symptoms as they observed them, or should have observed them more closely.

c.     Interfering with DOSS' medical attention by preventing his requested referral to ortho specialist for MTL and adequate treatment for chronic peripheral neuropathy pain from reaching proper medical staff, specifically ARNP Barosey who is the health care provider who finally began the proper procedure of referral to ortho.

d.     DOSS had a previous appointment to see Barosey about 2/5/16 but someone interfered with DOSS' receipt of callout and/or failed and refused to

summon DOSS from his assigned class, just like Nash did on 2/5/16, when exchanging wheelchair for walker.

     e.    Failing to report and respond curatively to CCS obvious failures in the assessment and treatment of DOSS' condition.

     43.    The servants, agents, and employees of GEO and CCS were at all times material to this action, acting within the course and scope of their employment. As such, GEO and CCS are liable for their actions pursuant to Fla Stat § 768.28.

     44.    GEO and CCS' negligence along with Heller, Nash, Amede, STINE, and LAWRENCE jointly, severally and directly caused damages as alleged above.

     **WHEREFORE,** Plaintiff RICHARD DOSS hereby demands damages against defendants GEO and CCS jointly and severally and proximately with other named defendants for compensatory damages of $250,000.00 and all other remedies available under § 768.28.

### COUNT III
### DELIBERATE INDIFFERENCE V ALL DEFENDANTS PURSUANT TO 42 U.S.C. § 1983, 1988

     45.    Plaintiff repeats and re-alleges paragraph 1 as if fully set forth herein.

     46.    This count is brought against all defendants whether individually or in their official capacity pursuant to 42 USC § 1983.

     47.    As operator of a prison facility all actions of GEO employees and agents as alleged herein were performed under color of law and in violation of DOSS' eighth amendment rights.

     48.    As health care providers and of medical attention at a prison facility, Heller, Nash, STINE, employees, agents of CCS and CCS itself as a contractor of GEO and other political subdivision were acting at all times hereto under color of law for purposes of § 1983 liability.

49.   It is well settled that the DI to the SMN of a prisoner constitutes the unnecessary and wanton infliction of pain prescribed by the eighth amendment, *Estelle v. Gable*, 429 US 97, 104 S. CT. 285 L. Ed. 2d 151 (1976).

50.   Defendant's Heller and other employees and agents of defendant's GEO and CCS and the State were or should have been fully aware of DOSS' need for medical treatment.

51.   Despite their knowledge, or due to other DI in assessing plaintiffs conditions, defendant's failed to provide even minimally adequate medical care, failed to provide DOSS with adequate and proper medication to treat chronic peripheral neuropathy pain, failed to diagnose plaintiffs medical condition and for all practical purposes abandoned DOSS to a painful and more serious physical injury by preventing him to fall on cement floor and/or becoming entangled with walker with wheels because of inability to catch himself due to bilateral r/c tears, and bilateral ACL tears that in fact did exacerbate his condition by aggravating or reinjuring or doing other serious physical injury to preexisting injuries as noted above.

52.   At the time of drafting this complaint DOSS had fallen on cement floor at least fourteen times and still counting since 2/5/16, the date his wheelchair was taken. He has reinjured or aggravated left hip, right elbow and exacerbated pre existing injuries of MTL. Three times at SFRC on 10/24/16.

53.   At all times material hereto, defendants knew or would have known had they not exhibited DI to his medical treatment and assessment that failure to provide medical care would result in substantial risk of serious physical injury and/or to DOSS' life to preclude timely and effective medical care once put on notice by "request for sick call" or, personal oral complaints or, through grievances but ignored.

54.     The medical services provided to DOSS by defendants was so grossly substandard, incompetent and/or inadequate as to be fairly characterized as medical care so cursory as to amount to no medical care at all.

55.     At all times material hereto, the defendants were acting in conformity with or as a result of established policies, practices and customs of defendant GEO and CCS for the provision of health care to inmates at SBCF.

56.     Defendant's failures as alleged above, are all attributable to deliberately indifferent policies, practices, procedures and customs of the defendants

57.     On information and belief GEO and CCS' deliberately indifferent policies, practices, procedures, and customs result from their failure to provide sufficient funds and adequate staff to meet the medical needs of inmates at SBCF.

58.     On an unknown date, Nash made the statement to William Lowenthal, "we're barely above our budget."

59.     On information and belief GEO and CCS deliberately indifferent policies, practices, procedures and customs allowed its inmates to go untreated as the result of failure to establish an administrative system that would track and recognize when an inmate is required prompt medical attention.

60.     William Lowenthal suffers from hepatitis C; Heller gave him one year to live if he did not receive treatment. Yet, Heller and Nash would rather let him die than to give him required treatment because it was too expensive.

61.     On information and belief GEO and CCS DI policies, practices, procedures and customs in effect at the facility, at all times material to this action, was to intentionally delay access to proper medical care to its inmates in hopes that they would transfer or EOS and therefore save thousands of dollars in medical costs all to the detriment of inmates such as the plaintiff's MTL that would amount

to $40,000.00 to $60,000.00. Interalia, delayed the examination, diagnosis and treatment.

62. On information and belief, the policy, practice, procedure and customs stated in paragraph 61 above has caused the death of at least one inmate (May, June 2016) and possibly more inmates at SBCF.

63. Plaintiff repeats and re-alleges the allegations demonstrated in paragraph 61 above, and further states the because of these customs that ARNP Sandy resigned because he did not want to be implicated or blamed for the intentional acts for the purpose of saving money.

64. Permitting life threatening conditions in addition to allowing conditions likely to cause serious physical injury or a direct threat to plaintiff and other inmate's health for non medical reasons is a pervasive practice which is intentional and DI to their SMN.

65. Defendants GEO and CCS are responsible for the polices, practices, and procedures which govern the provision of medical care at SBCF

66. Those who make policies, practice, procedures and customs for defendants GEO and CCS were on notice long before DOSS was incarcerated at SBCF (for the second time) of the deficiencies in the provision of medical care as alleged above.

67. Under Estelle and *Farmer v. Brennon*, 511 US 824 (1994), Deliberate Indifference has three components: (1) subjective knowledge of the risk of harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence, based on the aforementioned facts demonstrated, it is clear that these defendants conduct in this case has met all three components, thus constituting Deliberate Indifference to plaintiff's serious medical needs in violation of his constitutional rights.

68. Plaintiff repeats and re-alleges the facts stated and the law set forth in paragraph 67 above and further alleges under the objective component that

although no tragic event occurred other than causing additional, potentially serious injury to left hip and right elbow and exacerbating preexisting multiple torn ligaments, the facts demonstrated in this complaint show a condition(s) that is extreme and possess an unreasonable risk of serious damage to future health or safety and deprives him of the minimal civilized measure of life's necessities, or a condition that a risk that today's society chooses not to tolerate.

69.     Defendant's deliberate indifference directly, proximately and jointly and severally caused plaintiff's damages as alleged above in paragraph 30

70.     Plaintiff DOSS demands damages of $250,000.00 against all defendants named in this count directly, proximately and jointly and severally for causing damages alleged in paragraph 30. DOSS also seeks punitive damages.

### COUNT IV
### INTENTIONAL DISCRIMINATION AND FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF *ADA/RA V. FDOC, GEO, CCS*

This claim arises from the FDOC, GEO, and CCS intentionally discriminating against DOSS because of his disability. That the denial of medical care amounts to the exclusion from medical services and this deprivation cause an exclusion from other services, programs or activities. The taking of his wheelchair violated Title II of the ADA, 42 USC 12132 and Section 504 of the RA, 29 USC §794.

71.     DOSS suffers a disability of bilateral torn ligaments in knees and shoulders, chronic peripheral neuropathy and musculoskeletal pain secondary to falling 65' from beam onto lower deck aboard vessel in 1978.

72.     DOSS repeats and re-alleges paragraph 71 above as if fully set forth herein and further states he is a qualified individual with a disability and that by reason of his disability, he is intentionally excluded from participation in benefits of

PSA provided by the FDOC, GEO and CCS, including medical services, hygiene, access to various parts of his cell including proper use of toilet facilities (fallen four times in now ADA accessible cells when he could not push the button to flush the toilet because it was too hard to push, no grab bars and fell off toilet trying to push button) or other parts of the facility from which he was qualified to participate.

73.    The discriminatory intent caused DOSS to be excluded from participating in major life activities that have substantially limited his abilities to:

        a.    Sleep – the neuropathic and musculoskeletal pain previously described above deprived DOSS of the MLA of sleep.  The above named defendants, together with HELLER and NASH, who conspired to deny treatment for neuropathy, amounted to medical indifference.

        b.    Walking, standing, stooping, bending, eating, thinking, concentrating, caring for himself, hygiene, bathing, performing manual tasks, general rehabilitative and correctional activities and day to day prison operations.

74.    Defendant's refusal to provide reasonable accommodation of wheelchair that was taken for non-medical reasons forcing DOSS to have to rely on completely and maybe partially torn R/C and torn knee ligaments amounted to refusal to provide needed accommodations where his disability resulting limitations and necessary reasonable accommodations were or should have been open, obvious and apparent.  It also resulted in refusal to provide such fundamentals as mobility (walker cause at least fourteen falls on cement floor causing serious injury to left hip, both elbows and exacerbation of MTL, medical care and from 8/12/16 to 10/28/16, DOSS had no clean clothes or a way to get clean ones and no way to wash dirty ones.  He was denied access to showers because the water was so cold in an air conditioned dorm and officials refused to call maintenance to repair it for at least three weeks.

75. As a result of the facts stated above, DOSS as a disabled prisoner was forced to suffer serious punishment without penalogical justification.

76. The discriminatory intent displayed by all defendants under § 504 of the RA is demonstrated by the fact defendants knew that harm to a federally protected right was substantially likely and they failed to act on that likelihood.

77. Defendants had knowledge through grievances and appeals and denials by ones appointed to monitor such issues but they intentionally and deliberately ignored needed assistance under the acts.

78. The FDOC, GEO and CCS, by and through its servants, agents and employees, intentionally discriminated against DOSS when they had sufficient knowledge or notice of discriminatory conduct by the taking of his wheelchair and providing a walker that amount to unsafe transportation.

79. Defendants were aware of DOSS' disability and need for accommodations upon his transfer to SBCF on 10/28/15, and then the taking of his wheelchair and resultant injuries there from. The needs for necessary reasonable accommodations were open, obvious and apparent.

80. DOSS suffered considerable inconvenience making him unable to conduct MLA without unusual difficulty, pain and dangerous on a daily basis making the conditions unsuitable for a handicapped individual.

81. The adverse consequences were proximately caused by HELLER, NASH, STINE, LAWRENCE, CCS and GEO.

82. These same defendants mentioned in paragraph 81 above failed to exercise reasonable care to provide suitable quarters for DOSS as a disabled or handicapped prisoner.

83. DOSS suffered damages set forth in paragraph 30 above that was proximately cause by the defendants' breach of a legal duty.

**WHEREFORE**, Plaintiff demands judgment against all defendants for compensatory damages within the jurisdictional limits of this court jointly, severally and directly and proximately and any other remedies available under 42 USC 1983, and the ADA/RA.

## WARDEN STINE, AWP LAWRENCE INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES

84.     After DOSS' wheelchair was taken from him and he was issued a walker with wheels under the guise of "to improve mobility," after only one hour had already fallen against the wall exiting his cell.  This caused him to have a black eye for 2 weeks and DOSS and subsequently fell 14 times from 2-5-15 to 10-28-16.  As such, STINE was on actual and constructive notice.

85.     STINE either knew about DOSS' denial of medical care or he should have known since he signed all of DOSS' grievances and actually spoke with him at least once a week.

86.     Even though the taking of DOSS' wheelchair was procured by HELLER and NASH and it was always agreed to by STINE, E. O'HARVEY, McMANUS and L. BOWDEN. (hereinafter "grievance defendants")

87.     Despite DOSS' medical records traveling with him from Charlotte and Dr. Wetterers' detailing his need for a wheelchair that DOSS had fallen numerous times within 4 months after issuance of a cane by Dr. BARRIOS, these grievance defendants conspired to violate his federally protected rights of ADA/RA violations and Eighth Amendment Prohibition against cruel and unusual punishment where he was forced to ambulate with a rolling walker at SBCF and further at Dade until he saw ARNP Rankin and not BARRIOS. As a result:

a.     DOSS was unable to access certain PSA of GEO and CCS.

b.    DOSS was unable to access MLA that was of central importance to his everyday prison life for over 2 years and counting.

c.    DOSS' request for reasonable accommodation of a trained inmate impaired aide to be moved into his cell and the taking of his wheelchair amounted to engaging in protected activity for purposes of retaliation claim. It also amounted to the adverse consequences of falling 14 times at SBFC and eight more until his wheelchair was returned.

88.    Despite having the opportunity to correct these deficiencies, GEO, CCS, LAWRENCE, STINE and FDOC had in place either an explicit *or implicit* policy of allowing its subordinates, employees or agents to intentionally discriminate against disabled/handicapped prisoners' (medical services and modifications/accommodations) needed such as DOSS.

89.    GEO, CCS and FDOC actions were pursuant to municipal policy of causing physical punishment for complaining in the form of a trained impaired aide and a better wheelchair or repairs to existing one.

90.    GEO and CCS' actions by and through its employees STINE, HELLER, NASH, LAWRENCE and AMEDE maintained an official policy or custom for which they had actual or constructive knowledge of being intentionally and DI as to its known or obvious consequences.

91.    The violation of a federally protected right is that policy or custom that would delay or refuse medical care for MTL amounts to punishment without penal justification.

92.    GEO and CCS by and through its employees listed above were put on notice both verbally and in writing, yet DOSS was ignored or provided responses in bad faith by the grievance defendants. These responses rationalized the taking of his wheelchair and denial of medical care that it was to improve mobility or "did not meet the criteria" for referral or "did not complete physical therapy. Yet DOSS

completed PT which was the reason why nurse practitioner Barosey referred DOSS to orthopedic specialist.

93.    GEO and CCS were even put on notice by filing notice of intent to sue and intent to initiate litigation provided to these defendants and GEO in Boca Raton, Fla.  Therefore, they lacked any reason not to know that its responses or lack thereof created an obvious and substantial risk of reoccurring abuse and injury.

94.    GEO and CCS had a policy and custom of inadequate or negligent hiring, retention, supervision and training.

95.    On information and belief none of X GEO and CCS employees have received any type of training on how to treat disabled and handicapped prisoners under the ADA based on common sense.  Therefore, GEO, CCS, and the FDOC maintained a custom or policy of neglecting to train its agents, servants or employees in the proper common sense approach in how to assist and treat IWD.

96.    ON 8/29/17, DOSS received surgery to repair completely torn left R/C and bicep tendon that had been exacerbated by falls but it was re-torn by an officer 45 days later.

97.    GEO, CCS and the FDOC receives Federal Financial Assistance.

98.    DOSS exhausted administrative remedies.   The administrative remedies exhausted are held by FDOC in a file maintained by Classification.

**WHEREFORE,** Plaintiff Richard DOSS demands judgment against all defendants, jointly and severally and directly and approximately for compensatory damages and all other remedies available under ADA and RA.

Plaintiff further demands jury trial on all issues so try able and punitive damages.

Richard Doss, 921633

Filed 3/16/18

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL
CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.    50-2018-CA-003525-XXXX-MB
DIVISION:   AG: Circuit Civil Central - AG (Civil)

RICHARD DOSS,

          Plaintiff(s)

-vs-                                      SUMMONS

GEO GROUP,

          Defendant(s)

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this
action on defendant:

GEO GROUP
one park place
ste 700
621 NW, 53rd street - Boca Raton, Fl 33487
Each defendant is required to serve written defenses to the complaint or petition on:

Plaintiff's , whose address is:
**RICHARD DOSS #921633**
c/o GRACEVILLE CORRECTIONAL FACILITY
5168 EZELL RD.
Graceville, FL   32440

within 20 days after service of this summons on that defendant, exclusive of the date of service, and to
file the original of the defenses with the clerk of this court either before service on plaintiff's attorney
or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant
for the relief demanded in the complaint or petition.

DATED on: **Sep 14 2018**

Sharon R. Bock
Clerk & Comptroller

By:

**JOSIE LUCCE**

SERVED                    11:30   A M On   9/18   20  18
OFFICE OF                          PALM BEACH COUNTY, FL

DEPUTY SHERIFF                                    I.D. NO.

FILED: PALM BEACH COUNTY, FL SHARON R. BOCK, CLERK 9/13/2018 11:30:07 AM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL
CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.: 50-2018-CA-003525-XXXX-MB
DIVISION: AG: Circuit Civil Central - AG (Civil)

RICHARD DOSS,

      Plaintiff(s)

-vs-

                                  SUMMONS
                            PERSONAL SERVICE
GEO GROUP,                     ON A NATURAL PERSON

      Defendant(s)

TO        **WARDEN, STINE**
           *South Bay Correctional Facility* (LAST KNOWN)
           *600 U.S. Hwy South*
           *South Bay, Fla. 33493-2233*

THE STATE OF FLORIDA
TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and copy of the
complaint/petition in this lawsuit on the above named defendant.

IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a
written response to the attached complaint/petition with the Clerk of this Court. A phone call will not protect you.
Your written response, including the case umber given above and the names of the parties, must be filed if you want
the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your
wages, money and property may thereafter be taken without further warning from the court. There are other legal
requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an
attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you
must also mail or take a copy of your written response to the >Plaintiff/Plaintiff's Attorney, named below.

                RICHARD DOSS          DC# 921633 GRACEVILLE
                                        CORRECTIONAL FACILITY 5168
                                        EZELL RD.
                                        Graceville, FL   32440

(Plaintiff/Plaintiff's Attorney)

DATED ON:  **Sep 17 2018**



                                Sharon R. Bock
                                  Clerk & Comptroller

                                  By:

                                  **JOSIE LUCCE**

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL
CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.: 50-2018-CA-003525-XXXX-MB
DIVISION: AG: Circuit Civil Central - AG (Civil)

RICHARD DOSS,

Plaintiff(s)

-vs-

GEO GROUP,

Defendant(s)

SUMMONS
PERSONAL SERVICE
ON A NATURAL PERSON

TO      ASSISTANT WARDEN, LAWRENCE
South Bay C.I,
600 US HWY 27 South
South Bay Fl. 33493-2233

THE STATE OF FLORIDA
TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and copy of the
complaint/petition in this lawsuit on the above named defendant.

IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a
written response to the attached complaint/petition with the Clerk of this Court.  A phone call will not protect you.
Your written response, including the case umber given above and the names of the parties, must be filed if you want
the court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your
wages, money and property may thereafter be taken without further warning from the court.  There are other legal
requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an
attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you
must also mail or take a copy of your written response to the >Plaintiff/Plaintiff's Attorney, named below.

RICHARD DOSS

DC# 921633 GRACEVILLE
CORRECTIONAL FACILITY 5168
EZELL RD.
Graceville, FL   32440

(Plaintiff/Plaintiff's Attorney)

DATED ON:  **Sep 14 2018**

Sharon R. Bock
Clerk & Comptroller

By:

**JOSIE LUCCE**